USDC SDNY
DOCUMENT
[ELECTRONI]CALLY FILED
DOC #:
DATE FILED: 12/19/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RAMONA JOYNER,                            :
                                          :      11 Civ. 6005 (JSR)
                  Plaintiff,              :
                                          :      MEMORANDUM ORDER
                                          :
        -v-                               :
                                          :
CONTINENTAL CASUALTY CO.,                 :
                                          :
                  Defendant.              :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        Plaintiff Ramona Joyner brings this suit challenging

the denial of her long-term disability insurance benefits claim

under the Employee Retirement Income Security Act of 1974

("ERISA"), 88 Stat. 891. In connection with her claims, plaintiff

seeks discovery beyond the scope of the administrative record of

defendant Hartford Life Group Insurance Company ("Hartford"),

successor-in-interest to named defendant Continental Casualty Co.

("Continental"). Defendant objects to any extra-record discovery.

After the initial scheduling conference in this case, held on

October 12, 2011, the Court directed the parties to submit letter

briefing defending their respective positions on the standard of

review and discovery outside the administrative record. Both

parties submitted their briefs on October 19, 2011, and their

responses to each other's brief one week later, on October 26,

2011.

        Having carefully considered the parties' briefs, the

Court determines that limited discovery on some of the issues

plaintiff raises is warranted. In particular, the Court concludes

that plaintiff can seek discovery on two issues.  First,
plaintiff may seek discovery of any further plan documents that
show whether defendant Hartford was a proper "named fiduciary"
identified in "the plan instrument" as required by ERISA. See 29
U.S.C. 1102(a)(2). Second, in accordance with the Supreme Court's
direction in Met. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008),
plaintiff may seek discovery on the issue of Hartford's alleged
conflict of interest as both payor and evaluator of plaintiff's
disability claim, limited to document requests and a deposition
of a Hartford representative pursuant to Rule 30(b)(6). Fed. R.
Civ. P. 30(b)(6). All of plaintiff's other requests for discovery
are hereby denied. Additionally, the Court concludes that the
appropriate standard of review is an arbitrary and capricious
standard, as Hartford had discretionary authority to interpret
the terms of the plan. See Fay v. Oxford Health Plan, 287 F.3d
96, 104 (2d Cir. 2002) (holding where insurer has discretionary
authority, the benefits decision is reviewed under the arbitrary
and capricious standard).

        "Point I" of plaintiff's submission seeks discovery to
ascertain whether Hartford was properly delegated discretionary
authority to determine plaintiff's eligibility for benefits and
to interpret the terms and provisions of the policy, and whether
Hartford is the proper "named fiduciary" with the right to

review, evaluate and decide plaintiff's appeal of her denied disability claim. Letter Brief of Plaintiff Ramona Joyner dated Oct. 19, 2011 ("Pl. Br.") at 2. The Court must address three separate questions contained in plaintiff's "Point I": first, whether the Plan originally conferred discretionary authority on Continental Casualty; second, whether Continental transferred that authority to defendant Hartford, the successor-in-interest to Continental's group disability business, when Hartford purchased the disability plan at issue; and third, whether Hartford was a "named fiduciary" that could provide plaintiff with a "full and fair review" of her claim pursuant to 29 U.S.C. § 1133(2).

As to the question of whether the Plan conferred discretionary authority on Continental Casualty, no further discovery is necessary. The "Group Long Term Disability Certificate" clearly states that "When making a benefit determination under the policy, We have discretionary authority to determine Your eligibility for benefits and to interpret the terms and provisions of the policy." Hartford Letter Brief dated Oct. 19, 2011 ("Def. Br.") Ex. A, at 6. "We" in the Certificate is defined by the contract to mean the "Continental Casualty Company, Chicago, Illinois." Pl. Br., Ex. 1 at 17. This clear language shows the Plan vests discretionary authority in

3

Continental. See Krauss v. Oxford Health Plans (NY), Inc., 517
F.3d 614, 622-23 (2d Cir. 2008) (holding that reservation of
discretion must be "clear" but need not use the words
"discretion" or "deference").

Plaintiff, however, argues that because this
Certificate is admittedly not the "Policy," Def. Br. Ex. A at 6,
"it is not a governing plan document and of no force or effect."
Pl. Br. at 4-5; see CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1878
(2011) (holding "summary documents" do not constitute the terms
of the plan for purposes of § 502(a)(1)(B)). But CIGNA is
inapplicable to this case. In CIGNA, the Supreme Court held
the insurer's Summary Plan Description, a document required by 29
U.S.C. § 1022(a), did not constitute the terms of the plan for
purposes of ERISA § 502(a)(1)(B). Id. Here, however, the
Certificate is not designated a Summary Plan Description, nor
does it comport with the SPD requirements outlined in 29 U.S.C. §
1022. Further, the integration clause in the Group Policy states
"The policy, the Employer's application, Your certificate of
coverage, and Your application, if any, and any other attached
papers, form the entire contract between the parties." Pl. Br.
Ex. 1, at 15. Thus, unlike a Summary Plan Description, this
Certificate, according to the plain language of the Policy, is
part of the plan's terms and is "legally binding," and thus gives

4

Continental discretionary authority to interpret the plan. See
CIGNA, 131 S. Ct. 1877-78 (refusing to "make the language of a
plan summary legally binding").

        Turning to whether Continental transferred its
discretionary authority to Hartford when Hartford purchased
Continental's group disability business, Hartford has provided
this Court and Joyner with the asset purchase documents for that
transaction, filed under seal. See Protective Order dated Oct.
31, 2011. Those documents show that the CNA Group Life Assurance
Company ("CNA"), the reinsurer of Continental's group health
insurance businesses, was purchased by Hartford Life, Inc. and
Hartford Life and Accident Insurance Company ("Hartford Inc.")
and that CNA would administer the insurance plans sold to
Hartford Inc., including the instant plan. See Declaration of
Leslie T. Soler ("Soler Decl.") Ex. A at JOYNER 002623-24,
002628, 002647 CONFIDENTIAL.[1] As part of the Administrative
Services Agreement entered into between Continental and CNA, CNA,
the Administrator, was appointed to perform claim adjustment
services for the policies. See Soler Decl. Ex. B § 4.01. In its

---

[1] On December 31, 2003, CNA Group Life Insurance Company changed
its name to Hartford Life Group Insurance Company. Soler Decl. ¶
8. On December 31, 2006, Hartford Life Group Insurance Company
merged with Hartford Life and Accident Insurance Company, with
Hartford Life and Accident Insurance Company being the surviving
entity. Soler Decl. ¶ 9.

role as Administrator, the Administrative Services Agreement
states CNA would, among other responsibilities:

> [R]eview all Claims and determine whether the Claimant is
> eligible for benefits and if so, the nature and extent of
> such benefits. Such determination shall be made (i) in
> accordance with the terms of the Policies (such Policies and
> any Certificates issued thereunder being collectively
> referred to herein as the "Insurers' Source Documents"), and
> (ii) consistent with applicable law.  Such review shall
> include, without limitation: (A) determining eligibility and
> Policy benefits . . . .
>
> [. . .]
>
> [N]otify Claimants whose Claims have been denied of such
> denial and state the reasons therefore in accordance with
> the Policies and applicable law . . ., it being understood
> that Administrator shall establish a review committee with
> respect to Claims determinations to the extent required
> under ERISA and other laws applicable to Claims
> determinations and that Administrator shall also pursue,
> defend, and otherwise conduct appeals of Claims
> determinations to the extent either required under ERISA or
> other laws or deemed advisable by Administrator.

Soler Decl. Ex. B § 4.02(c), (i) (emphasis supplied). Given that
CNA was to administer the plans in accordance with the terms of
the Policies and any Certificates issued under the Policies, and
given that the instant Certificate stated that Continental had
"discretionary authority" to interpret provisions of the Plan,
that discretionary authority was vested in CNA, and thus
transferred to Hartford.

        Other courts that have examined whether Hartford held
discretionary authority after purchasing the Continental plans
have concluded similarly. In Schnur v. CTC Comms. Corp. Group

Disability Plan, No. 05-cv-3297(RJS), 2010 WL 1253481 (S.D.N.Y. Mar. 29, 2010), aff'd 413 F. App'x 377 (2d Cir. 2011), the Court held that Hartford acquired discretionary authority through the transfer agreements and a plan provision broad enough to indicate that "those charged with implementing [the plan] will have such discretion." Id. at *10 (quoting Butts v. Continental Casualty Co., 357 F.3d 835, 838-89 (8th Cir. 2004)). The Court in Schnur also noted, that, as a "de-facto successor-in-interest" to Continental, CNA likely "succeeds to any deference granted to the original administrator by the terms of the Plan." Id. at *10 n.3 (citing Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 960 (9th Cir. 2006); Giannone v. Metro. Life Ins. Co., 311 F. Supp. 2d 168, 175 (D. Mass. 2004)); see also Young v. Hartford Life & Acc. Ins. Co., No. 09 Civ. 9811(RJH), 2011 WL 4430859, at *6 (S.D.N.Y. Sept. 23, 2011) (holding the plan's vesting of discretionary authority with Continental gives Hartford discretionary authority); Barnes v. Hartford Life & Acc. Ins. Co., No. 07-12141, 2008 WL 4298466, at *2 (E.D. Mich. Sept. 12, 2008) (relying on "successor-in-interest" theory to conclude Hartford held discretionary authority). Accordingly, the arbitrary and capricious standard applies to any determinations made by Hartford pursuant to the plan. See Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002) (holding where insurer has

discretionary authority, the benefits decision is reviewed under the arbitrary and capricious standard). Thus, no discovery on the issue of discretionary authority is required, and plaintiff's request is hereby denied.

Separately, plaintiff argues that she requires discovery to determine whether Hartford is an "appropriate named fiduciary" that can provide plaintiff with the requisite opportunity for a "full and fair review." Pl. Br. at 5 (quoting 29 U.S.C. § 1133(2)). The Court concludes that plaintiff is entitled to discovery on this issue, as it is not clear from the documents provided to the Court that Hartford is a "named fiduciary" for purposes of ERISA. See 29 U.S.C. § 1102. Plaintiff intimates that because the Plan documents do not state explicitly that Hartford is a "named fiduciary," it cannot be a named fiduciary. See Pl. Br. at 6-7 ("[T]he purported contract does not contain the word 'fiduciary' at all."). This is an incorrect interpretation of the phrase "named fiduciary" in ERISA.  ERISA does not require that the plan documents name Hartford <u>as</u> a fiduciary. Rather, all that is required is that Hartford <u>is</u> a fiduciary who is <u>named</u> in the plan documents. See 29 U.S.C. § 1102(a)(2) ("[T]he term 'named fiduciary' means a <u>fiduciary who is named</u> in the plan instrument . . . ." (emphasis supplied)). Here, the Administrative Services Agreement assigns Hartford

(formerly CNA) the responsibility of evaluating and reviewing benefits claims, see Soler Decl. Ex. B § 4, making Hartford a fiduciary for ERISA purposes. See Schnur, 2010 WL 1253481, at *10 (holding defendant "became a fiduciary pursuant to its responsibilities under the administrative services agreement"); Winkler v. Met. Life Ins. Co., No. 03 Civ. 9656 (SAS), 2004 WL 1687202, at *2 (S.D.N.Y. July 27, 2004) ("The SPD invests MetLife with authority to evaluate claims and to review participants' appeals. MetLife is thus charged with an important discretionary role in implementing the Plan, and is a fiduciary for ERISA purposes.").

But, even though Hartford is a fiduciary for ERISA purposes, the Court cannot yet determine that Hartford is "named in the plan instrument" as ERISA requires. 29 U.S.C. § 1102(a)(2). Defendant argues that the policy Endorsement provided to the Court names Hartford as the claim fiduciary under the Plan, following completion of Hartford's purchase of Continental's long-term disability policies. See Letter Brief of Defendant Hartford Life Group Insurance Company dated Oct. 26, 2011 ("Def. Opp. Br.") at 5. The Endorsement, however, does not state what defendant claims it states. Rather, it amends the policy by adding "The name CNA Group Life Assurance Company is revised to Hartford Life Group Insurance Company wherever it

9

appears." Def. Br. Ex. A, Doc. 9. The problem, however, is that "CNA Group Life Assurance Company" does not appear in any of plaintiff's plan documents provided by either party to the Court. Her policy defines "We" in the policy and Certificate to mean Continental, not CNA. See Pl. Br., Ex. 1 at 17. Thus, whether Hartford is a named fiduciary for ERISA purposes, based on the documents currently before the Court, depends on whether this apparently useless appendage clause added to the policy by the Endorsement, changing "CNA" to "Hartford" wherever CNA appeared in the policy (here, nowhere), is sufficient to show Hartford is a fiduciary that has been "named in the plan instrument" under § 1102(a)(2). This issue has not been raised or briefed by the parties, and it would be improvident for the Court to decide the issue based on the current submissions.[2] While it is unclear to the Court how further factual development of what appears to be an entirely legal question would be of any use to resolve this issue, nonetheless, in case there are further plan documents that have not yet been provided to plaintiff (or to the Court) that may bear on this issue, plaintiff may have discovery on this issue, limited to document requests for plan documents.

_____

[2] The Court does note, however, that ERISA requires the plan name a fiduciary "in the plan instrument" in order to be a valid plan, § 1102(a)(2), and the parties' current submissions call into question whether the plan remains valid after its transfer to Hartford.

Next, in Point II of plaintiff's submission, plaintiff seeks discovery "to ascertain the extent to which defendant's financial conflict of interest influenced its decision to terminate plaintiff's claim." Pl. Br. at 9. When the standard of review is the arbitrary and capricious standard, the Court is generally limited to reviewing the administrative record of the plan administrator. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).[3] The Court, however, has discretion to admit evidence outside the record if the plaintiff can show "good cause" to do so. Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc., No. 10 Civ. 7427(JSR), slip op. at 16 (Nov. 11, 2011); Krauss, 517 F.3d at 631. "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' that may, under certain circumstances, warrant the introduction of additional evidence." Biomed, No. 10 Civ. 7427(JSR), slip op. at 17 (citing DeFelice, 112 F.3d at 67). Here, plaintiff argues that because defendant is both the claims payor and claims decision maker, it has an "inherent structural conflict of interest." Pl. Br. at 9. Generalities, however, are insufficient to show "good cause"; plaintiff's claimed structural conflict of interest must be "bolstered by specific allegations."

---

[3] Even under a de novo standard of review, the Court is generally limited to reviewing the administrative record. DeFelice v. Am. Int'l Life Assur. Co. of N.Y., 112 F.3d 61, 66-67 (2d Cir. 1997).

Id. (quoting Puri v. Hartford Life Ins. & Accident Ins. Co., No. 3:10-cv-00118 (PCD), 2011 U.S. Dist. LEXIS 55204, at *3 (D. Conn. May 12, 2011)).

That being said, "the standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence." Baird v. Prudential Ins. Co. of Am., No. 09 Civ. 7898, 2010 WL 3743839, at *8 (S.D.N.Y. Sept. 24, 2010) (quoting Ramsteck v. Aetna Life Ins. Co., No. 08 Civ. 0012(JFB)(ETB), 2009 WL 1796999, at *8 n.3 (E.D.N.Y. Jun. 24, 2009)). But what that "less stringent" standard is remains somewhat unclear. Thus, in Baird, Judge Gardephe held that the plaintiff "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." Baird, 2010 WL 3743839, at *8 (quoting Yasinoski v. Conn. Gen. Life Ins. Co., No. 07 Civ. 2573(RRM)(AKT), 2009 WL 3254929, at *5 (E.D.N.Y. Sept. 30, 2009)) (emphasis removed); accord Mergel v. Prudential Life Ins. Co. of Am., No. 09 CV 00039(HB), 2009 WL 2849084, at *2 (S.D.N.Y. Sept. 1, 2009) (Baer, J.); Trussel v. Cigna Life Ins. Co. of N.Y., 552 F. Supp. 2d 387, 390-91 (S.D.N.Y. 2008) (Scheindlin, J.). On the other hand, in Hogan-Cross v. Met. Life Ins. Co., Judge Kaplan rejected any special standard for conflict-of-interest discovery,

12

holding that <u>Glenn</u> "[a]brogated [altogether] the limitations on discovery unique to ERISA cases." 568 F. Supp. 2d 410, 415 (S.D.N.Y. 2008).

      Here, plaintiff seeks conflict of interest discovery on:

    1)   The quality of Defendants' firewalls, if any, erected between the claims administrators and those interested in the carrier's finances;

    2)   Defendant's reliance on medical and vocational evidence favorable to it to the exclusion of evidence favorable to Plaintiff;

    3)   Defendant's insistence that the claimant apply for Social Security Disability benefits and, in the same breath, denying the claimant is disabled;

    4)   Defendant's selection of Dr. D. Dennis Payne, M.D. to perform the peer review that formed the medical basis for denying Plaintiff's claim;

    5)   Whether Defendant provided Dr. Payne and all other claim evaluators with all of the relevant evidence supporting Plaintiff's claim;

    6)   Defendant's history of biased claims administration.

Pl. Br. at 11.

If the standard is the ordinary discovery standard of allowing plaintiff to obtain any "relevant" evidence that "appears reasonably calculated to lead to the discovery of admissible evidence," then plaintiff's discovery requests are proper. Fed. R. Civ. P. 26(b)(1); Hogan-Cross, 586 F. Supp. 2d at 414. If, on the other hand, the standard is evidence that has a "reasonable chance" of satisfying the "good cause" requirement, the question becomes a closer call. The only argument plaintiff makes suggesting this evidence has a reasonable chance of showing "specific allegations" of a financial conflict rising to the level of "good cause" such that the Court can go outside the administrative record is the purported bias of Dr. Dennis Payne who performed the medical peer review that formed the basis of the claim denial. Letter Brief of Plaintiff Ramona Joyner dated Oct. 26, 2011 ("Pl. Opp. Br.") at 9-10. At this albeit preliminary stage, this purported peer review bias appears unlikely to be sufficient to show "good cause" for Hartford's conflict of interest. According to defendant, Dr. Payne's review is only one piece of evidence in the record, plaintiff has not identified any medically unsound parts of the opinion, and, according to defendant, on administrative appeal after a blind referral to Dr. Paul F. Howard, M.D., Dr. Howard reached similar conclusions as Dr. Payne, and the Hartford claims specialists

14

ultimately made their own independent conclusions. <u>See</u> Def. Opp. Br. at 16-18. Absent evidence of a flawed medical opinion, it is not clear why alleged peer reviewer bias should be imputed as a conflict of interest to the insurance company. <u>See</u> <u>Fortune v. Group Long Term Disability Plan for Emps. of Keyspan Corp.</u>, 637 F. Supp. 2d 132, 143 (E.D.N.Y. 2009) (acknowledging financial conflict but holding no convincing medical reason to devalue peer reviewers' conclusions), <u>aff'd</u> 391 F. App'x 74 (2d Cir. 2010). Since the differing standards for discovery applied by courts in this District appear to lead to different results in this case, this Court must determine which discovery standard is appropriate after the Supreme Court's opinion in <u>Glenn</u>.

In <u>Glenn</u>, the Supreme Court stated that district courts "should consider" a financial conflict of interest as a "factor" in determining whether a plan administrator abused its discretion. 554 U.S. at 115-19. In so holding, the Court noted that it did not "believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." <u>Id.</u> at 116. The Court did not address specifically the standard of discovery, and noted it was not providing "a detailed set of instructions." <u>Id.</u> at 119; <u>id.</u> at 121 (Roberts, C.J., concurring in part and concurring in the judgment) (criticizing

15

majority for being "so imprecise about how the existence of a
conflict should be treated in a reviewing court's analysis").
Courts around the country have adopted a wide range of standards
– some permitting open discovery, others limited discovery on
conflicts, and others no discovery at all. See, e.g., Winterbauer
v. Life Ins. Co. of N. Am., No. 4:07 CV 1026 DDN, 2008 WL
4643942, at *4-6 (E.D. Mo. Oct. 20, 2008) (collecting cases).

> Given Glenn's command that district courts "should
consider" evidence of a financial conflict of interest, 554 U.S.
at 108 (emphasis supplied), it appears reasonable to allow
plaintiff the opportunity to discover evidence the Court may find
gives it good cause to go outside the administrative record. And
since Glenn warned against erecting procedural hurdles to showing
a financial conflict, 554 U.S. at 116-17, the Court concludes
that it is unwarranted to impose a standard such as a "reasonable
chance" that discovery will lead to "good cause" at the discovery
stage of litigation. See Baird, 2010 WL 3743839, at *8.[4]

> This does not afford plaintiff free reign over
discovery on any issue in this case, however, and the Court

---

[4] Indeed, tracing the various cases that have used the
"reasonable chance" of showing "good cause" standard reveals that
the standard originated before the Supreme Court issued its
opinion in Glenn, further casting into doubt its continued
validity. See Anderson v. Sotheby's Inc., No. 04 Civ.
8180(SAS)(DFE), 2005 U.S. Dist. LEXIS 9033, at *17 (S.D.N.Y. May
13, 2005).

16

disagrees that Glenn has completely abrogated the "limitations on discovery unique to ERISA cases." Hogan-Cross, 568 F. Supp. 2d at 415. But that issue is not presently before the Court. Plaintiff's proposed discovery topics on Point II all relate to an alleged financial conflict of interest, and plaintiff presents at least some allegations suggesting discovery on this issue will not be a mere fishing expedition. Indeed, all six topics plaintiff identifies for the scope of her inquiry relate to topics the Supreme Court identified as relevant to the financial conflict of interest inquiry in Glenn, including: 1) a history of biased claims administration; 2) whether the administrator has taken active steps to reduce potential bias and to promote accuracy; 3) encouraging plaintiff to seek Social Security Disability benefits and then denying the claimant is disabled; and 4) whether the administrator is giving improper weight to evidence favorable to denying the claim. Accordingly, plaintiff has leave to obtain discovery on the narrow issue of financial conflict of interest. To prevent plaintiff from engaging in a mere fishing expedition, however, this discovery is limited to document requests and a deposition of a representative of Hartford pursuant to Rule 30(b)(6), Fed. R. Civ. P. 30(b)(6), without prejudice to plaintiff later seeking to depose other witnesses. Whether any evidence plaintiff obtains meets the level

17

of "good cause" such that the Court can consider evidence outside the administrative record in this case is an issue that is not yet ripe for decision.

Turning next to Point III of plaintiff's submission, plaintiff seeks discovery "to determine the integrity of the claim file and to determine ambiguous or unclear terms therein." Pl. Br. at 13. Plaintiff states, however, that she has not yet received the claim file from Defendant. Defendant responds that "Hartford's records demonstrate that Joyner's counsel has had a copy of the claim file containing the initial claim review since on or about April 21, 2010." Def. Opp. Br. at 8 n.3. Either way, this issue is not yet ripe for consideration. Accordingly, the Court hereby denies plaintiff's request, without prejudice to later requesting discovery once plaintiff has reviewed the claim file.

In Point IV of plaintiff's submission, she requests discovery "to identify the specific and segregated funds that have been set aside to pay her claim." Id. at 14. Plaintiff argues that she needs to determine whether defendant has identified specific funds to satisfy her equitable claim under ERISA § 502(a)(3), and that if those funds do not exist, "her claim will proceed at law under § 502(a)(1)(B)." Id. This argument relies on an incorrect interpretation of ERISA.  To

18

begin with, plaintiff has the order of her claims wrong; the Court will first determine whether she is entitled to relief under § 502(a)(1)(B) for an improper denial of benefits, and turn to § 502(a)(3) only if § 502(a)(1)(B) would not adequately address her claims. Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011); see Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001) (holding equitable relief under § 502(a)(3) not "normally" appropriate (quoting Varity Corp. v. Howe, 516 U.S. 489, 515 (1996))). Furthermore, plaintiff's reliance on Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), is inapposite. Great-West addressed an insurance company's claim for reimbursement of a tort settlement amount based on medical benefits provided to defendants, which the Court held to be a contract claim, a legal claim not entitled to equitable relief under § 502(a)(3). Id. at 207-10; see also Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 362-63 (2006) (distinguishing Great-West and allowing insurer's tort settlement reimbursement claim to proceed under § 502(a)(3) where insured's funds were "specifically identifiable" as they were set aside in insured's investment accounts). It did not address the type of claim presented in this case: a claim for improper denial of benefits brought by the beneficiary under § 502(a)(1)(B).  Second, a claim

19

under § 502(a)(1)(B) is a claim in equity, not law. Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1258-59 (2d Cir. 1996). Finally, plaintiff provides no adequate legal basis that would justify discovery on identifying specific funds the insurer set aside to pay her claims; her argument that if specific funds are not identified, she has no choice but to proceed at law is without merit. Accordingly, plaintiff's request for discovery on identifying specific and segregated funds held by Hartford is denied.

Thus, plaintiff's discovery at this time is limited to plan documents relating to whether defendant Hartford is a "named fiduciary" for ERISA purposes, and documents and one 30(b)(6) deposition of a Hartford representative for plaintiff's discovery requests regarding Hartford's alleged financial conflict. Assuming arguendo that this plan is valid, see supra at 10 n.2, the Court will apply an arbitrary and capricious standard of review to Hartford's benefits determinations.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          December _16_, 2011

20